UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                    :

L.C.                                       :
individually and on behalf of E.A., a child with :
a disability,                           :

                      :
                     Plaintiff,   :

                      :
          - against -         :
                      :
                      :

NEW YORK CITY DEPARTMENT OF   :
EDUCATION,                   :

                      :
              Defendant.  :
                      :
--------------------------------------------------------X

21-CV-1250 (VSB)

**<u>OPINION & ORDER</u>**

<u>Appearances</u>:

Benjamin Kopp
Cuddy Law Firm, P.L.L.C.
Auburn, New York

Erin Elizabeth Murray
Kevin Mendillo
Mendillo, Bouchard, & Pado, PLLC
Auburn, New York
*Counsel for Plaintiff*

Howard Steven Krebs
Jonathan L. Pines
Martha Nimmer
Thomas Lindeman
Marina Moraru
New York City Law Department
New York, New York

Matthew Peter Nealon
Domina Law Group PC LLP
Omaha, Nebraska
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

L.C. ("Plaintiff") filed this lawsuit against the New York City Department of Education ("Defendant" or "DOE") on behalf of herself and her minor child E.A., claiming to have prevailed against Defendant in an administrative hearing under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), and seeking attorneys' fees and costs under the statute's fee-shifting provision, 20 U.S.C. § 1415(i)(3), for her counsel Cuddy Law Firm ("CLF").  (Doc. 1.)  Now before me is Plaintiff's motion for summary judgment on her request of attorneys' fees and costs, which Plaintiff calculates to be $50,297.54.  (Docs. 20, 27.) Because I find that Plaintiff's asserted attorneys' fees are excessive, the motion is GRANTED in part and DENIED in part.

## I.     Factual Background[1]

Plaintiff L.C. and her minor child E.A. are residents in the County of Queens.  (R56.1 ¶ 2.)[2]  E.A. is classified as a child with a disability as defined by IDEA and a student with emotional disturbance.  (*Id.* ¶¶ 3, 7.)  By the Due Process Complaint ("DPC") dated November 9, 2018, Plaintiff demanded a due process hearing pursuant to 20 U.S.C. § 1415(f)(1) before DOE.[3] (*Id.* ¶ 8.)  The DPC requested:  (1) a functional behavioral assessment; (2) a behavior intervention plan; (3) an independent neuropsychological evaluation; (4) a psychiatric evaluation; (5) that Defendant convene the CSE to develop a new Individualized Education Program ("IEP") for E.A.; and (6) compensatory educational services.  (*Id.* ¶¶ 10, 13.)  DOE

---

[1] The statements of fact set forth in this section are undisputed unless indicated otherwise.

[2] "R56.1" refers to Plaintiff's Rule 56.1 statement of material facts in support of her motion.  (Doc. 21.)  Twice Plaintiff's 56.1 statement refers to "M.A.," but context indicates that this may be a typographical error and that Plaintiff meant to refer to E.A.  (R56.1 ¶¶ 2, 6.)  I will assume Plaintiff is referring to E.A.

[3] Plaintiff states that the DPC was dated November 8, 2019, which appears to be a typographical error, because, as Defendant points out, the DPC submitted by Plaintiff was in fact dated November 9, 2018.  (*See* Doc. 23, Ex. A.)

appointed John Farago as the impartial hearing officer ("IHO"). (*Id*. ¶ 11.) In December 2018, Plaintiff and Defendant entered into a partial resolution agreement. (*Id*. ¶ 12.)

On April 25, 2019, Plaintiff initiated a second impartial due process hearing on behalf of E.A., alleging a continued denial of a free and appropriate public education ("FAPE") for the 2018-2019 school year based on a new IEP developed by Defendant on March 1, 2019. (*Id*. ¶ 13.) The second DPC requested the remaining items of relief raised in the first DPC that had not been settled, as well as some additional items of relief. (*Id*. ¶ 14.) The second case was also assigned to IHO Farago, who then consolidated the two cases. (*Id*. ¶ 16.) A hearing on the merits was held on January 17, 2020. (*Id*. ¶ 17.) On January 20, 2020, the IHO issued his findings of fact and decision. (*Id*. ¶ 18.)

## II.    **Procedural History**

Plaintiff filed her complaint on February 1, 2021, seeking attorneys' fees "pursuant to the fee-shifting provisions of the [IDEA]." (Doc. 1.) On August 6, 2021, Defendant filed its answer to the complaint. (Doc. 12.) On October 26, 2021, Plaintiff filed her motion for summary judgement and supporting documents. (Docs. 20–27.) On December 7, 2021, Defendant filed its opposition to Plaintiff's motion, as well as supporting documents. (Docs. 31–37.) On December 15, 2021, Plaintiff filed her reply to Defendant's opposition, with supporting documents. (Docs. 40–41.) I stayed this case on April 10, 2023, pending the Second Circuit's decision in what would be *H.C. v. New York City Department of Education*, 71 F.4th 120 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 490 (2023), and lifted the stay on June 26, 2023, after the decision was issued. (Docs. 52, 54.) The parties each submitted a supplemental memorandum addressing the Second Circuit's decision in *H.C.*, 71 F.4th 120. (Docs. 59–60.)

### III.    Legal Standard

"Motions for summary judgment customarily resolve IDEA actions in federal court."

*L.J.B. v. N. Rockland Cent. Sch. Dist.*, 660 F. Supp. 3d 235, 255 (S.D.N.Y. 2023) (citation

omitted).  Summary judgment is appropriate only when "the parties' submissions show that there

is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R.

Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be

counted." *Id*.

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id*. at

256, and to present such evidence that "would allow a reasonable jury to find in his favor," *see*

*Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (citing Anderson, 477 U.S. at 256).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1)(A).  If "a party fails . . .

to properly address another party's assertion of fact as required by Rule 56(c), the court may,"
among other things, "consider the fact undisputed for purposes of the motion" or "grant
summary judgment if the motion and supporting materials—including the facts considered
undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).  Finally, in
considering a summary judgment motion, a court must "view the evidence in the light most
favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant
summary judgment only when no reasonable trier of fact could find in favor of the nonmoving
party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see
also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably
support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel
Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

####    IV.    <u>Discussion</u>

The IDEA provides that "[a] court, in its discretion, may award reasonable attorneys' fees
as part of the costs . . . to a prevailing party . . ." 20 U.S.C. § 1415(i)(3)(B)(i).  "A plaintiff
'prevails' when 'actual relief on the merits of his claim materially alters the legal relationship
between the parties by modifying the defendant's behavior in a way that directly benefits the
plaintiff.'" *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 18 (2d Cir. 2014) (quoting
*Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)).  The fees may be reduced under 20 U.S.C.
§ 1415(i)(3)(F) if the requested rate "exceeds the hourly rate prevailing in the community for
similar services by attorneys of reasonably comparable skill, reputation, and experience" or "the
time spent and legal services furnished were excessive considering the nature of the action or
proceeding."  However, this provision does not apply if the "local educational agency
unreasonably protracted the final resolution of the action or proceeding or there was a violation

of this section." *Id*. § 1415(i)(3)(G).

To calculate reasonable attorneys' fees under the IDEA, courts utilize the "lodestar"

method, under which a "fee award is derived by multiplying the number of hours reasonably

expended on the litigation [by] a reasonable hourly rate." *H.C.*, 71 F.4th at 126 (quoting *G.M. v.*

*New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)). "In determining the first component

of the lodestar—the number of hours reasonably expended—the district court may exclude hours

that are excessive, redundant, or otherwise unnecessary," or it may "deduct a reasonable

percentage of the number of hours claimed as a practical means of trimming fat from a fee

application." *Id.* (internal quotation marks omitted).

The second input to the lodestar calculus is the reasonable hourly rate, or the "rate a

paying client would be willing to pay." *Id.* (quoting *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). Courts should

consider all pertinent factors, including those articulated in *Johnson v. Georgia Highway*

*Express*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v.*

*Bergeron*, 489 U.S. 87 (1989)), which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the level of skill required to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 231 (2d Cir. 2019). However, it is not necessary for the

district courts to "recite and make separate findings as to all twelve *Johnson* factors."

*Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (summary order).

Moreover, the Second Circuit has cautioned that "'a reasonable hourly rate' is not itself a

matter of binding precedent . . . . [and] is not ordinarily ascertained simply by reference to rates awarded in prior cases." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005). Instead, the court should conduct "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel" and "evaluat[e the] evidence proffered by the parties," while taking "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id.*

Here, Defendant does not dispute that Plaintiff is a "prevailing party" and therefore entitled to an award of reasonable attorneys' fees and costs, but challenges the demanded award as unreasonable. (*See* Opp. 1.)[4] I will first determine the reasonable hourly rates for CLF's attorneys and paralegals, then examine CLF's billing records to determine the reasonable hours billed on the matters as well as reimbursement for costs and expenses.

### A.    *Reasonable Hourly Rates*

The hourly rates charged by CLF related to this matter are listed below:

| | |
|---|---|
| Andrew Cuddy | $550.00 |
| Jason Sterne | $550.00 |
| Kevin Mendillo | $450.00 |
| Kevin Mendillo (travel) | $225.00 |
| Paralegals | $225.00 |

(*See* Cuddy Decl. ¶ 59.)[5]

To justify its hourly rates, CLF relied on the declaration of Steven A. Tasher, Esq., who

---

[4] "Opp." refers to Defendant's memorandum of law in opposition to Plaintiff's motion. (Doc. 36.)

[5] "Cuddy Decl." refers to the declaration of Andrew Cuddy in support of Plaintiff's motion. (Doc. 22.) As will be explained later, I decline to award Plaintiff attorneys' fees related to the federal action; therefore, I need not examine the rate of Erin Murray, who only worked on the federal action. (*See* Cuddy Decl. ¶ 59.)

is "an expert in the field of assessing and evaluating the reasonableness of attorneys' fees." (Mem. 9.)[6]  Tasher reviewed the filings and the billing records in this action and in the underlying administrative proceeding; after comparing the rates charged in this case with (1) the rates charged by CLF in other special education law cases, and (2) the rates charged by other firms in special education law cases, Tasher concludes that the requested hourly rates are reasonable.  (*See* Tasher Decl., Exs. E-3, E-4.)[7]  Plaintiff also relied on declarations submitted by attorneys in other IDEA cases within this District who sought to recover reasonable attorneys' fees, and concludes that the rates charged here fall squarely within the range normally charged by other IDEA attorneys.  (Mem. 12 (*E.g.*, "firm owners/partners range starts at $500 an hour to $1,400 an hour for IDEA litigation services.").)

As an initial matter, I note that I am not the first judge to be confronted with and consider these arguments from CLF.  In *S.H. v. New York City Dep't of Educ.*, 21-CV-4967, 2022 WL 254070 (S.D.N.Y. Jan. 26, 2022), *aff'd sub nom. H.C.*, 71 F.4th 120, Judge Lewis J. Liman examined the expert report of Tasher, which adopted the same methodology and covered essentially the same materials as Tasher's report does in this case.  (*See generally* Docket No. 21-CV-04967, Doc. 19.)  Judge Liman concluded that CLF's arguments based on the report "are of limited weight." *Id*. at 7.  Specifically, Judge Liman found that Tasher's conclusion, i.e. that CLF's requested rates were reasonable, "offered advice on an ultimate issue before the Court and thus is not admissible." *Id*. (citing *Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992)).  Judge Liman also found that the engagement letters presented by CLF with the same rates and the corresponding invoices at most can show that the firm "ha[d] been able to extract higher fees

---

[6] "Mem." refers to Plaintiff's memorandum of law in support of her motion.  (Doc. 27.)

[7] "Tasher Decl." refers to the declaration of Steven A. Tasher, Esq., in support of Plaintiff's motion.  (Doc. 24.)

from paying clients than that which the Court[s] ha[ve] approved." *Id*. Judge Liman further

noted that Plaintiff failed to produce evidence to establish that the work done by the three law

firms examined by Tasher—Milbank LLP, Shipman & Goodwin, and Riker Danzig Scherer

Hyland & Perretti LLP— "was comparable to the work CLF was required to do in this case."[8]

*Id*. Other courts in this District have reached similar conclusions. *See, e.g., Y.S. v. New York

City Dep't of Education*, No. 21-CV-711, 2022 WL 3572935, at *6 (S.D.N.Y. Aug. 19, 2022)

(according Tasher's declaration limited weight because he "does not make a showing of

scientific, technical, or other specialized knowledge related to IDEA fees litigation" and he

improperly opines on the ultimate legal issue of whether CLF's fees are reasonable); *K.O. v. New

York City Dep't of Educ.*, No. 20-CV-10277, 2022 WL 1689760, at *11 (S.D.N.Y. May 26,

2022) (finding Tasher's report to be "of limited weight" because it "offers advice on an ultimate

issue before the Court"); *T.H. v. New York City Dep't of Educ.*, No. 21-CV-10962, 2022 WL

16945703, at *7 (S.D.N.Y. Nov. 15, 2022) (noting that Tasher's declarations regarding IDEA

fees are routinely "found to be of limited persuasion"), *report and recommendation adopted*, No.

21-CV-10962, 2022 WL 17991623 (S.D.N.Y. Dec. 29, 2022). I agree with the conclusions of

my colleagues in this District and, consequently, afford the report in the Tasher Declaration only

limited weight.

   The remaining evidence submitted by CLF is not sufficient to justify their rates. Courts

tend to be suspicious of declarations from IDEA attorneys that purport to establish the prevailing

market rates. *See e.g. H.C. v. New York City Dep't of Educ.*, No. 20-CV-844, 2021 WL

2471195, at *4 n.5 (S.D.N.Y. June 17, 2021) ("Courts in this District have determined that these

---

[8] It's worth noting that the case examined by Tasher where Milbank LLP was counsel, *L.V. v New York City Dep't of Educ.*, 700 F. Supp. 2d 510 (S.D.N.Y. 2010), was a class action.

types of affidavits are of limited value if they do not also provide the context necessary to properly apply the *Johnson* factors."(collecting cases)), *aff'd*, 71 F.4th 120; *C.B. v. New York City Dep't of Educ.*, No. 18-CV-7337, 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (explaining that district courts "have decided not to rely too heavily [on such] affidavits, since they may only provide isolated examples of billing rates of a few lawyers, may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients" (internal quotation marks omitted)). Moreover, "the court is itself an expert and can properly consider its own knowledge and experience concerning reasonable and proper fees and in light of such knowledge and experience and from the evidence presented, can form an independent appraisal of the services presented and determine a reasonable value thereof." *Schoolcraft v. City of New York*, No. 10-CV-6005, 2016 WL 4626568, at *4 (S.D.N.Y. Sept. 6, 2016) (citing *Newman v. Silver*, 553 F. Supp. 485, 497 (S.D.N.Y. 1982), *aff'd in part, vacated in part on other grounds*, 713 F.2d 14 (2d Cir. 1983)).

In *L.L. v. New York City Dep't of Educ.*, No. 20-CV-2515, 2022 WL 392912 (S.D.N.Y. Feb. 9, 2022), *aff'd sub nom. H.C.*, 71 F.4th 120, a case where the plaintiff sought attorneys' fees for work done by CLF attorneys in an IDEA proceeding, Judge J. Paul Oetken determined that the reasonable hourly rate was $360 for Andrew Cuddy, $360 for Jason Sterne, $300 for Kevin Mendillo (and $150 for his travel), and $100 for paralegals. *Id*. at *3. In *S.H.*, Judge Liman awarded hourly rates of $420 for Andrew Cuddy, $400 for Jason Sterne, $300 for Kevin Mendillo, $125 for Shobna Cuddy, the senior paralegal, and $100 for other paralegals. 2022 WL254070, at *6. In *S.H.*, the parties disputed the statute of limitations and "significant issues of fact," *id*. at *1–2, thus justifying the slightly higher rate. On the other hand, in *L.L.*, DOE did not oppose the plaintiff's positions at the hearing, 2022 WL 392912, at *3, which is more similar

10

to this case. *See also id.* (explaining that an hourly rate of around $400 per hour "is generally

awarded when the impartial hearing was heavily contested and involved more complex

matters.").[9]

Therefore, I find that the reasonable rates for Andrew Cuddy is $360/hour, Jason Sterne

$360/hour, Kevin Mendillo $300/hour (and $150 an hour for travel), and $100 for paralegals, as

reflected in the chart below:

|  | Original Rate | New Rate |
|---|---|---|
| Andrew Cuddy | $550.00 | $360.00 |
| Jason Sterne | $550.00 | $360.00 |
| Kevin Mendillo | $450.00 | $300.00 |
| Kevin Mendillo (travel) | $225.00 | $150.00 |
| Paralegals | $225.00 | $100.00 |

These rates comport with the awards in similar cases and reflect consideration of other

*Johnson* factors. Particularly, this administrative proceeding did not present complex fact

patterns or novel issues, and consisted mainly of a hearing, during which no witness was

examined. (Mem. 3.) Neither the client nor the circumstances imposed stringent time

limitations; apart from a short period of delay caused by two cancelled hearings, there was

nothing that makes this case particularly "undesirable" or otherwise "exceptional." *S.H.*, 2022

---

[9] Tasher states that, in his opinion, this case is "in no way a routine or ordinary matter" because it "involve[s] the intersection of the law and special education implementation issues, demanding the participation of counsel with unique skills and insight into these issues." (Tasher Decl., Ex. E-2 at 1.) This reasoning could be said about almost all practice areas of law, which generally would require "intersection of the law and" the specific area. I do not find such reasoning convincing. Moreover, courts have routinely found that IDEA cases, especially where DOE does not oppose the plaintiff's position, are not particularly complex. *See e.g., L.L.*, 2022 WL 392912, at *3; *H.C.*, 2021 WL 2471195, at *6 (describing the case as "minimally contested" despite that DOE had taken a non-committal stance and that the two administrative proceedings spanned more than a year).

WL 254070, at *7.

### B.     *Reasonable Billing Records*

The billing record submitted by Plaintiff demonstrate that, for the administrative

proceeding, CLF billed 74.90 hours for attorneys (including 20 hours of travel time) and 24.5

hours for paralegals for a total of $35,137.50; the expenses and costs related to the administrative

proceeding was $1,795.54, including $749.38 for lodging and $153.52 for meals.  (Cuddy Decl.

¶ 59.)  For the federal action, CLF billed 30.2 hours for attorneys and 2.4 hours for paralegals,

plus $402.00 for a filing fee for a total amount of $13,364.50.  (*Id*.)  Defendant challenges the

amount billed as excessive.  (Opp. 17.)

### 1.  Administrative Proceeding

#### a.   Attorneys' fees

When the court finds a claim for attorneys' fees to be excessive, the award may be

decreased either by a "percentage reduction" or by a "disallowance of certain hours billed." *D.P.*

*v. New York City Dep't of Educ.*, 21-CV-27, 2022 WL 103536, at *10 (S.D.N.Y. Jan. 10, 2022),

*aff'd sub nom. H.C.*, 71 F.4th 120.  After reviewing billing records related to the administrative

proceeding, I find that a 20% deduction is reasonable.

Plaintiff objects to any deduction of attorneys' fees because Defendant allegedly

"unreasonably protracted the administrative proceeding."  (Mem. 6 (citing 20 U.S.C. § 1415

(i)(3)(G)).)  Specifically, according to Plaintiff, Defendant requested to cross-examine Plaintiff's

witness shortly before the initially scheduled hearing; the witness was providing an affidavit in

lieu of direct examination to support the relief for the compensatory academic instruction.

(Mendillo Decl. ¶¶ 45–46.)[10]  The hearing then had to be rescheduled due to the witness's

---

[10] "Mendillo Decl." refers to the declaration of Kevin M. Mendillo in support of Plaintiff's motion.  (Doc. 23.)

unavailability.  (*Id.* ¶ 46.)  When the hearing finally took place after several months' delay,

Defendant suddenly notified Plaintiff that DOE would not be contesting the issue related to the

compensatory academic instruction, rendering the witness examination no longer required.  (*Id.*

¶¶ 52, 53.)  CLF essentially claims that had Defendant notified them earlier of the change of

plan, they would not have spent as much time preparing for the hearing.  (Mem. 3.)

    First, I note that I am not obligated to consider the facts regarding Defendants' so-called

"protraction" of the proceeding, because these facts are not in Plaintiff's Rule 56.1 Statement.

*McCall v. Genpak, LLC*, No. 13-CV-1947, 2015 WL 5730352 (S.D.N.Y. Sept. 30, 2015) ("[T]he

Second Circuit has been clear that a district court 'is not required to consider what the parties fail

to point out in their Local Rule 56.1 statements.'" (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d

62, 73 (2d Cir. 2001))).  Even if I exercise my discretion and consider these facts, *see DeRienzo*

*v. Metro. Transp. Auth.*, 237 F. App'x 642, 646 (2d Cir. 2007) (summary order) (noting that

whether to consider facts outside the Rule 56.1 statement is within the district court's discretion),

I do not find Defendant unreasonably protracted the proceeding.  DOE was entitled to change its

strategy halfway through the proceeding, and Plaintiff has not presented any evidence suggesting

bad faith.  In any event, even if the DOE had "unreasonably protracted the proceedings, [20

U.S.C. § 1415(i)(3)(G)] would not prohibit that district court from reducing the fees requested . .

. because the IDEA authorizes an award only of *reasonable* attorneys' fees."  *H.C.*, 71 F.4th at

128 (internal quotation marks omitted) (emphasis in original); *see also D.P.*, 2022 WL 103536,

at *12 ("[E]ven a finding of unreasonable protraction would not permit this Court to jettison the

[analysis for reasonable fees].").

    Here, Defendant contests the 23.8 hours billed on the first DPC request, the 6.9 hours

billed by Kevin Mendillo on the second DPC, and the 1.0 hour billed by Andrew Cuddy in

reviewing the second DPC.  (Opp. 23.)  Defendant further contests the 3.7 hours billed in

preparation for the 14-minute hearing.  (*Id.* 23–24.)  Specifically, Defendant argues that a

"preparation-to-proceeding" ratio of 15:1— 3.7 hours to 14 minutes—is significantly higher than

the ratio found by other courts to be unreasonable.  (*Id*. 24. (citing *C.B.*, 2019 WL 3162177, at

*10 (subtracting duplicated time)).)  I find that the total hours billed for the proceeding are

excessive, especially considering that (1) the first DPC is a 6-page document of a straightforward

record of E.A.'s background, conditions, and relief sought, (*see* Mendillo Decl., Ex. A), (2) the

second DPC is very similar to the first one, (*see* Mendillo Decl., Ex. C), and (3) this is a

minimally contested IDEA case that does not raise any complex or novel issues.

Defendant further contests the 20 hours billed by Mendillo for traveling from Auburn to

Brooklyn.  This is clearly excessive, particularly given that courts in this District routinely grant

about one hour each way for similar trips.  *See D.P.*, 2022 WL 103536, at *13 (reducing travel

time from 10 hours to 2 hours for a similar trip (collecting cases)); *L.L.*, 2022 WL 392912, at *5

(reducing travel time from 10 to 3 hours for a similar trip).

Finally, the bill includes time spent on work related to the firm's billing statement.  For

example, Shobna Cuddy, a senior paralegal, spent 1.0 hour preparing the billing statement,

followed by Andrew Cuddy billing 1.5 hour for "[r]eview[ing] billing statement for accuracy and

discretionary reductions;" Shobna Cuddy then again spent 1.0 hour reviewing that billing

statement.  (Billing Record I 25.)[11]  After the hearing, Shobna Cuddy again spent 1.0 hour on an

updated billing statement, followed by Andrew Cuddy spending 0.7 hours reviewing that

statement.  (*Id*. 35.)  "[A]ttorney and paralegal time spent reviewing and editing the billing

---

[11] "Billing Record I" refers to CLF's billing record for Plaintiff's administrative proceeding.  (Doc. 22-1.)  Pages
cited to in this document refer to the page numbers generated by the Court's electronic filing system.

statement for clarity should not be compensated." *H.C.*, 2021 WL 2471195, at *9 (collecting

cases); *see also R.G. v. New York City Dep't of Educ.*, No. 18-CV-6851, 2019 WL 4735050, at

*4 (S.D.N.Y. Sept. 26, 2019) ("DOE should not have to compensate Plaintiff's counsel for

administrative clean-up of their own entries.") (reducing the time spent on reviewing billing

statement for accuracy from 2.8 hours to 1.5 hours).  Here, the total 5.2 hours billed on preparing

the billing statement, including 3.2 hours of reviewing, is duplicative and excessive.

Accordingly, I will apply a 20% across-the-board deduction to CLF's attorneys' fees for

the administrative proceeding, which is reasonable based upon my examination of the billing

records and is also consistent with what my colleagues in this District have found to be

appropriate and reasonable hours for CLF attorneys in other cases.  *See H.C.*, 2021 WL 2471195,

at *8 (deducting 20% of CLF's hours billed); *R.G.*, 2019 WL 4735050, at *5 (deducting roughly

18% of CLF's hours billed).

### b.  Expenses and costs

Plaintiff's demand for expenses and costs is also excessive.  First, the $749.38 billed for

lodging is not compensable.  Courts in this District have repeatedly declined to award lodging

expenses for CLF attorneys based in Auburn, New York, who have travelled to attend hearings

in and around New York City.  *See, e.g.*, *H.C.*, 71 F.4th at 129–30 (affirming judgments in IDEA

fee cases declining to award any lodging expenses to Auburn-based CLF attorneys); *R.G.*, 2019

WL 4735050, at *6 (deducting lodging expenses for Auburn-based CLF attorney who travelled

to Brooklyn for hearing); *L.L.*, 2022 WL 392912, at *5 (same).

CLF also billed $153.52 for meals during the two cancelled hearings and the actual 14-

minute hearing.  (Cuddy Decl. ¶ 59; Billing Record I 36–37.)  These expenses were "not

necessitated by the representation" and should be deducted.  *See R.G.*, 2019 WL 4735050, at *6

15

(deducting $57.87 worth of meals during the four hours of hearing in total). Similarly, I deny reimbursement for parking. *See L.L.*, 2022 WL 392912, at *5 (deducting parking expenses); *R.G.*, 2019 WL 4735050, at *6 (same). However, I find that $30 each way to be reasonable transportation costs, for a total of $60.[12]

I further agree with Defendant that the $0.50 per page for printing process service is excessive and instead should be $0.10 per page. *See H.C.*, 2021 WL 2471195, at *11 ("While there has undoubtedly been some inflation since 2012, district courts continue to find that $0.10 per page is an 'entirely reasonable compensation for printing costs, absent any indication in the record why the copies in this case are exceptionally expensive.'" (citing *R.G.*, 2019 WL 4735050, at *6)). Consequently, the adjusted printing cost is $37.20. Further, I deny reimbursement for fax expenses. Although Tasher indicates that it is his "understanding that some DOE offices require the necessary educational records in connection with these special education cases to be requested via fax machine," (Tasher Decl., Ex. G at 2), Plaintiff does not claim that they were in fact required to fax any documents by the IHO or DOE, nor do they cite to any guidance requiring fax submissions. Absent any claim that Plaintiff was required to fax documents, fax expenses are not compensable because "no rational client would pay to fax documents that could be transmitted for free via email." *R.G.*, 2019 WL 4735050, at *6.

### 2. Federal Action

Although a district court must "evaluate the costs of preparing the [fee] motion no differently from the costs of litigating the underlying case," *K.L.*, 584 F. App'x at 20 (citing *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995)),

---

[12] Although CLF seems to suggest that Kevin Mendillo travelled three times for the hearings (including two cancelled ones and the one actually held), (Mem. 3), these facts are not within Plaintiff's Rule 56.1 Statement, *see infra*, and Plaintiff failed to present sufficient evidence to establish that traveling for the two cancelled hearings was reasonable.

16

"[a] request for attorney's fees should not result in a second major litigation," *C.B.*, 2019 WL 3162177, at \*10 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "[I]f the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." *K.L.*, 584 F. App'x at 20 (affirming the district court's decision to award no fees for the federal action because it had concluded that the hours spent on litigating the fee petition was excessive and the underlying fee request was exorbitant (internal quotation marks omitted)). *See also G.T. v. New York City Dep't of Educ.*, No. 18-CV-11262, 2020 WL 1516403, at \*10 (S.D.N.Y. Feb. 12, 2020) (observing that "most courts in this district limit awards for time spent litigating an IDEA fee application to a fraction — often a small fraction — of the time spent on the underlying administrative proceeding," and that courts have approved fee awards as low as 8% of the amount sought), *report and recommendation adopted*, No. 18-CV-11262, 2020 WL 1503508 (S.D.N.Y. Mar. 30, 2020).

Here, I deny CLF's fee request for the federal action, except for the filing fee of $402, because I find that CLF's underlying fee request is exorbitant, and that the time it spent on the federal action is excessive. The total 32.6 hours CLF spent on the federal action is unreasonable, given that (1) this is a straightforward fee petition with no complex issues and no discovery involved; (2) this action is very similar to other fee petitions that CLF has been involved in, *see e.g.*, *S.H.*, 2022 WL 254070; *L.L.*, 2022 WL 392912; *D.P.*, 2022 WL 103536; and (3) to the extent that CLF prepared an expert report, declarations and exhibits, the majority of these documents have not helped me in deciding this motion, and many of them have been held repeatedly by other judges to be of limited weight, *see S.H.*, 2022 WL 254070, at \*7; *H.C.*, 2021 WL 2471195, at \*4 n.5.

Additionally, it appears that many hours billed by Kevin Mendillo were related to

17

administrative work; for example, he spent hours on ECF filing documents and reviewing ECF notifications. (Billing Record II 2–6.)[13] Further, Andrew Cuddy spent 0.3 hours and Kevin Mendillo spent 0.2 hours reviewing the same billing statements, (*id*. 3–4), although at the time— only shortly after the federal action was filed—the billing statements consisted almost entirely of the statements for the administrative proceeding, which CLF had already spent 5.2 hours preparing and reviewing, *see supra*.

As noted above and summarized in the chart below, Plaintiff is only entitled to $17,737.60 for the administrative proceeding, which is an over 50% reduction of its request of $36,933.04. In other words, the underlying fee request for the administrative proceeding is exorbitant. Courts have frequently decreased CLF's request for fees by a similar discount, but CLF persists here to apply for fees that courts have made clear are not reimbursable in similar situations, like timed billed for reviewing billing statements, *H.C.*, 2021 WL 2471195, at *9, and expenses for meals and parking, *R.G.*, 2019 WL 4735050, at *6; *L.L.*, 2022 WL 392912, at *5, without attempting to justify why such costs are appropriate in the face of other courts rejecting such requests.

According to Plaintiff, CLF emailed a fee demand to Defendant on September 18, 2020 in the amount of $33,933.04, and on February 11, 2021,[14] Defendant made "a settlement offer less than 50% of the initial [offer]." (Cuddy Decl. ¶¶ 36–38.) Defendant acknowledges, and Plaintiff does not dispute, that on August 2, 2021, Defendant made a settlement offer of $17,950. (Nimmer Decl. ¶ 14.)[15] The settlement amount offers from Defendants are close to the amount I

---

[13] "Billing Record II" refers to CLF's billing record for Plaintiff's federal action. (Doc. 22-2.)

[14] The declaration states "February 11, 2020," which seems to be a typographical error, as the date was "five months" after September 2020.

[15] "Nimmer Decl." refers to the declaration of Martha Nimmer in opposition to Plaintiff's motion. (Doc. 34.)

have determined Plaintiff is entitled to, and it appears that Plaintiff made unreasonable demands, rejected reasonable offers, and chose to pursue this lawsuit in an effort recover an excessive award.[16]  As a result, I conclude that Plaintiff is not entitled to any attorneys' fees related to this federal action, except for the filing fee.

## C.    *Interest*

I exercise my discretion not to award pre-judgment interest since Plaintiff fails to explain why such an award is necessary in order to provide adequate compensation.  In addition, Plaintiff fails to cite any IDEA cases in this District where pre-judgment interest was awarded.  *See M.H. v. New York City Dep't of Educ.*, No. 20-CV-1923, 2021 WL 4804031, at *31 (S.D.N.Y. Oct. 13, 2021) (declining to award pre-judgment interest), *aff'd sub nom. H.C.*, 71 F.4th 120; *D.P.*, 2022 WL 103536, at *16 (same); *N.G.B. v. New York City Dep't of Educ.*, No. 20-CV-6571, 2022 WL 800855, at *6 (S.D.N.Y. Mar. 16, 2022) (same), *aff'd sub nom. H.C.*, 71 F.4th 120; *S.H.*, 2022 WL 254070, at *9 (same).  However, Plaintiff is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

## D.    *Summary of Award*

The adjusted total award of attorneys' fees and costs is as follows:

| | Hourly Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $360 | 3.20 | $1,152.00 |
| Jason Sterne | $360 | 1.00 | $360.00 |
| Kevin Mendillo | $300 | 50.70 | $15,210.00 |

---

[16] Given the number of cases CLF filed around the same time, as well as the appeals sought after some of those cases were decided, *see, e.g.*, *H.C.,* 2021 WL 2471195; *L.L.*, 2022 WL 392912; *S.H.*, 2022 WL 254070; *D.P.*, 2022 WL 103536, it appears that CLF embarked on a campaign to unsettle well-established law related to attorneys' fees awards in IDEA cases.  The Second Circuit has since decided these appeals in a consolidated case that affirms existing law.  *See H.C.*, 71 F.4th at 126–130.

| | | | |
|---|---|---|---|
| Kevin Mendillo (travel) | $150 | 20.00 | $3,000.00 |
| Paralegals | $100 | 24.50 | $2,450.00 |
| Fee subtotal | | | $22,172.00 |
| **FEE SUBTOTAL w/ 20% CUT** | | | **$17,737.60** |
| Printing | | | $37.20 |
| Postage | | | $4.09 |
| Mileage/Transportation | | | $60.00 |
| Federal Filing Fee | | | $402 |
| **COST SUBTOTAL** | | | **$503.29** |
| **TOTAL** | | | **$18,240.89** |

## V.     Conclusion

Accordingly, Plaintiff's motion for summary judgment is GRANTED in part, DENIED

in part, and she is entitled to an award of attorneys' fees and costs in the amount of $18,240.89.

In addition, Plaintiff is awarded post-judgment interest on this amount, calculated at the

applicable statutory rate.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: January 2, 2025
        New York, New York

Vernon S. Broderick
United States District Judge

20